Appellant Robledo in this case was the driver of the car that crossed into Tijuana. He did assist in transporting the packages back into the United States where he was arrested at the border. He made multiple statements during the course of the proceedings, which is why it is somewhat confusing. Most of those statements he disavowed. His disavowals were supported by the statements made by his co-defendant, Ms. Gaitan. And essentially in this case, what was undisputed was that one day before the event, which took place independently, Ms. Gaitan and Appellant Robledo were approached by a person in the town where they both resided and asked if they would drive down to Tijuana to bring back drugs from Mexico. They independently and separately agreed. They did not meet nor know one another until the day that they drove down to Mexico in Ms. Gaitan's vehicle. Mr. Robledo was the driver. There was a third party that was in the car named Junior, and that evidence is supported both in the record and by government photographs of the border. So you're objecting that he did not receive a minor role adjustment? That's correct, Your Honor. So your contention is that the District Court did not properly consider the role of Junior, the person who recruited Mr. Robledo, and perhaps some other persons? Just his co-defendant, Ms. Gaitan, the three of them. Okay, so in their arguments before the District Court, it seemed to me that Ms. Gaitan and Mr. Robledo both compared their level of culpability to the other, not to Junior, a recruiter, or some other person. They did independently each discuss Junior. For example, Ms. Gaitan mentioned that Junior is the person that recruited her. They both mentioned that he was the person that was driving with them down to Tijuana. Ms. Gaitan specifically stated that Mr. Robledo had passed out in his hotel room the entire time they were there, and they were locked out, and she spent the time walking around Tijuana with Junior. The only reason that's important is because it refutes the idea that he was out packaging and weighing the drugs. Right, but there were his admissions that he had done that, and then photographs on his phone. So there was some basis for the District Court to conclude that Mr. Robledo had been, in fact, involved in packaging the drugs and putting them in the car. There was a basis, but the problem was that the facts were contested, and the judge just chose which version of the facts to go by, and did not do anything about the fact that there was a dispute. Both Ms. Gaitan and Mr. Robledo stated that they were recruited by Junior separately. Both of them stated that their role was to drive the car back across the border with the drugs, and they were going to receive a phone call as to where to deliver them, and that they were to be paid $5,000. So that... But she said she was to be paid $480. I think there was some confusion as to what she said, because she was sentenced separately, but she said in her pleadings that that was the original amount that she was offered by Junior. Okay, so the issue I'm having is that all of this information was before the District Court. The District Court knew about the testimony about Junior and the recruiter, and then determined that Mr. Robledo had an average participant's role, based on other things that were in the record, the photographs, his statements, admissions, in fact, that he had in fact packaged the drugs and put them in the car. So what more do you think needed... The District Court needed to say, as it's clear under our case law that they don't have to list everything if it's... We can tell from the record that they were fully aware of these other individuals. Two things. I think that the court's statement that Mr. Robledo was an average participant was... All the facts that he used to make that statement were actually facts that support this court's decisions in what constitutes a minor role. It was one disputed issue, and that was the packaging, that there were photographs of the packages on Mr. Robledo's phone. There was a dispute as to what those photographs meant. Mr. Robledo stated that he took those photographs because he did not want to be accused of stealing drugs, and in fact there was evidence... But why is the fact that this... Mr. Robledo made admissions when he was stopped at the border by the agents, and then later recanted? Why isn't the District Court allowed to weigh the evidence and make a determination? I just think that the District Court was not interested in hearing anything other than what the District Court had decided was an average role. Did the court cut off anybody? I'm sorry? You said the court wasn't interested. Did the court cut off... Was there any tender or proffer of proof or evidence that the court said, I'm not interested in hearing it, or was this entirely the decision of the advocates? Well, the court did cut me off during argument when I stated what my position was as to why Mr. Robledo's... The actions that were being considered were more consistent with that of a courier than that of an average participant or somebody higher, and cut me off and said that he'd had hundreds of those cases, that the typical case of a minor participant was someone who was down in Tijuana, got drunk in a bar, and then agreed to drive a car back across. The court had a very firm view of what it considers to be a minor participant or an average participant, which I don't believe is consistent with this court's decisions in Rodriguez and the other decisions that are mentioned in my pleadings. But even if that is... We're correct. Even if we accepted that, wouldn't any error here be harmless, given the sentence that was ultimately imposed, which would be below the sentence he would have received if he had gotten the departures or reductions for being a minor participant? That's a very valid point, but I think the problem is that the district court judge was very, I think, moved by some of the mitigating circumstances that Appellant Robledo had. However, he started so high that his opinion of what the mitigating circumstances were only reduced it down to the sentence that he ultimately gave. Had he started at a more appropriate... Let's say, for example, that he... What the standard is, is if we can determine from the record that the district judge would have given the same sentence. And he said on the record, I cannot justify a sentence any lower than what I'm giving you. It seems pretty clear on the record that that was the sentence that the district judge was going to impose. That's a valid point, Your Honor, but I disagree with you. I believe that what the judge was saying was that given how high the guidelines were, that was the maximum amount of love that he was prepared to give to Mr. Robledo because he did not find him to be a courier. Had he found him to be a courier and differently calculated what the guidelines were... Wait, the district judge specifically said that it doesn't turn on whether you're a courier. It's a very fact-specific analysis. You could be a courier who has an average role. You could be a courier who receives a minor participant deduction. But the judge seemed pretty aware of the standard. I mean, he did say that, correct? In the record, he said it doesn't turn on whether you're a courier. It's a fact-specific determination. Well, then he made those statements about what he considers a courier to be. There was a real difference of opinion in whether or not... For example, Mr. Robledo's argument was, look, Ms. Guyton and I went down there. We didn't know where we were. We stayed overnight in the hotel. We were given the drugs and we were told to bring them back. When we got across the border, we were going to get a phone call telling us where to drop them and I was going to be paid $5,000. That's classic courier behavior in the Southern District of California. We have literally tens of thousands of those cases all the time. That was the position that I was arguing Mr. Robledo was in, that that is exactly what he did. That's what the evidence supported that he did and that that was a courier role. He made the decision to go ahead and cross that border on his own, didn't he? I mean, there was... No, no. Hadn't his passengers bailed out of the... Right at the port of entry. Yeah, yeah. So he did not know, and the evidence is undisputed, that they drove up together to the port of entry and then she just got out and said, pick me up on the other side. He did not know that ahead of time. Is there evidence of whether he could have turned around at that point or not? I don't... and stayed in Mexico? Yeah. There is no particular evidence. I would note that the record... I don't want to hear anything that's not in the record. No, the only evidence that was in the record was that he had never been to Tijuana before. He had no idea where he was going and that he was right at the port of entry. I don't know if the court is familiar with the port of entry. It's not easy to do a U-turn when you get right there. I am, yes. Thank you. I don't want to cut off my colleagues, but did you want to reserve any time for rebuttal? Yes, thank you, Your Honor. We only have 37 seconds, but I'll give you a little more than that. Good morning. May it please the Court, David Keat again on behalf of the United States. This Court should affirm the sentence imposed by the District Court denying minor role because the defendant did not meet his burden to show that he was substantially less culpable than the average participant in the offense. In making this determination, the District Court correctly followed the three-step process set forth in Dominguez's cicado. First, it determined who the actual participants in this offense were, and here there appears to be no dispute between the government and the defense. The actual participants are limited to the two unnamed recruiters that Mr. Robledo mentioned, his co-defendant, Ms. Gayton, Mr. Robledo himself, of course, as well as this man named Junior. So the court did analyze the level of culpability of those five actual participants in the offense. Counsel, that's the point that I want to ask about. I think it's definitely fair on this record to conclude that the District Court knew of the various people involved in this situation. What I'm looking for is an indication in the transcript that the District Court did step two and actually sort of analyzed the relative culpability of all the different participants that had been identified. So where in the record does it show me that the District Court actually did that part? So that is inferred both from the active questioning of the court to the various parties. So the court walked through the five factors from the Sentencing Guidelines, Section 3B1.2, Comment 3. And then the court, at the end, before it imposed a sentence, before it found that there was no minor role in this case, said, quote, in looking at all the other indicia of knowledge, control, planning, involvement, that's what puts him in an average role. Okay, so that seems to me like step three, where you analyze the defendant's culpability. And I think that step three is absolutely met. I'm still struggling with where is step two analyzed? And how do I know that the District Court actually was sort of weighing? I mean, candidly, I'm not quite sure that the analysis that we've set forth in Dominguez makes a whole lot of sense in terms of this sort of supposed mathematical calculation. But that's what the court has said. And I still am not quite sure I see how step two was done. Well, the fact that the court made that conclusion that there was a comparison between the defendant and an average participant suggests that the court must have, therefore, come to a conclusion of who the average participant was. So you just want us to draw an imprint from the fact that the District Court said that the defendant here was average? Well, not just that, Your Honor, but the fact that the calculation was done in the sentencing papers of the defendant, as well as in the oral argument by the government and the defense, and the fact that the judge actively engaged in that analysis. It's similar, we would submit to the Diaz case, and dissimilar, we would say, to perhaps the Clench case, where there was no questioning with respect to the factors related in minor role analysis, and no discussion of the individual facts. So this case, we would submit, is entirely dissimilar from there, and much more similar to Diaz, where this court held that, in fact, we could look to the PSR, to the sentencing papers of the parties, in determining that the judge had that information before him when he made the decision, considered it, and stated, in fact, here on the record that he considered it, before deciding that minor role did not, in fact, apply. I think that's a fair position. I'm just trying to figure out, sort of, what this test means, if we say that, right? So, if the record is clear that step one is met, and the record is clear that step three is met, and then the record is clear that all the participants are at least identified in some way, either on the papers or at the hearing, then step two is met. What does step two even mean, if that's all that the record needs to reflect? Step two means that there has to be some determination of an average level of culpability against which the defendant can be compared. And that means, in order to make that determination, it means identifying the actual participants, and then determining, for each of those participants, analyzing the five factors, how culpable are each of them, and coming to some mathematical average, as opposed to a mathematical median, as discussed in Dominguez-Cicado. So, in this case, the court did, in fact, do that analysis, did conclude properly that minor role was not appropriate, and sentenced the defendant, as Your Honors have mentioned, to a 110-month sentence, which represents the low end of the guidelines, even if minor role would have applied. And so, therefore, Your Honors, even if this court finds that it was error to deny minor role, such error would be harmless for two separate reasons, under this court's opinion in Munoz-Camarena. First, because the court did, in fact, do that alternative calculation, albeit not directly, but the government went through the alternative calculation, the district court said, I did the same math, and I agree, and then only after that, analyzed the 3553A factors, and came to the conclusion that the sentence was appropriate. Separate and apart from that analysis, the fact that the ultimate sentence imposed was 110 months, which represents, again, the low end of the guidelines, if minor role were to have applied, also renders any error harmless, if, indeed, this court finds that it was error. What is the Ninth Circuit law on whether it can be harmless error if the sentencing judge started from the wrong point? That is, it doesn't matter where the end result is, there are circuits that take the view that if you start from the wrong point, it's not going to be harmless. So, our argument in this case relies on Munoz-Camarena and footnote 5 entirely, Your Honor. So, in that case, the court listed several different examples, non-exhaustive, but several different examples of a situation where an improperly calculated guidelines range would lead to harmless error, and one of those ways is if the court calculates the guidelines in the alternative, both with and without minor role, and then, after that, imposes sentence. Separate and apart, another example, again, in a non-exhaustive list that the court delineated in Munoz-Camarena, the court said if the ultimate sentence is within, in that case, the example was within both the properly and improperly calculated guidelines, it's harmless error. Here, it's not within both, it's within the guidelines that would be most favorable to the defendant with minor role. Thank you. And if the court has no further questions, we would submit. I guess I have one final question.  Do you think that Dominguez undermines it all, Munoz-Camarena, in terms of, I mean, in Dominguez, the court said, if we think that the three-step analysis isn't followed, we vacate and remand for resentencing. And I'm just curious, how do you reconcile those two cases, or do you think that there is a need to reconcile the two cases? I don't believe so, Your Honor. I think the Munoz-Camarena analysis is separate and apart because under Dominguez-Cicado, if those three steps are not followed, there is error, and then the only question is, is it harmless error, and you have to satisfy one of those factors set forth in the footnote to Munoz-Camarena. So a sentence that didn't qualify, if the guidelines weren't calculated twice, if none of the other ways in which you can create harmless error were met, then it would need to be remanded for new sentencing. Thank you very much. All right, thank you. And, counsel, I'll give you two minutes for rebuttal. Thank you, Your Honors. I think in this case, there is a, there is reason to wonder what Judge Battaglia would have done, what the district court judge would have done, had he calculated the guidelines differently. And that is because he placed great credence on where he was starting from, and only then and at that point did he go into any of the mitigating factors. The mitigating factors were very significant. And, again, I repeat. So I just, I'm trying to play that out in my mind. Is your thought, then, that if he had applied the minor role, he would have been at a lower offense-level starting point, and then maybe he would have varied down to the same extent that he did? I think that he would have varied down on the same factors that he varied down on. Well, that seems like a given. But it's about the math at this point in terms of whether it's harmless or not. The same factors would have been there, the same equities, sure. But your argument to work means that he would have had to apply the minor role and then varied downward to the same degree that he varied downward without the minor role. And what tells us that he would have done that? It's not in the record, but I've been in front of him for 20 years and I've seen how he sentences. It's very important where he starts, where he believes the case starts as to what degree he's going to, you know, what variances and what degree he's going to do. So I think that on this record it is both wrong for me to infer that I know what he would have done, just as it would be wrong for the government to infer that he would have given the same sentence. There's just no indication that that's the case. Wouldn't he – so he applied variances and went to the very bottom of the guidelines range. So to go lower than that, wouldn't he have had to apply a departure? I think that if – He would have had to gone – he would have to have sentenced outside of the variances that are set forth in the guidelines and departed from the guidelines, which is a much bigger deal, right? So to go below 110 months, you have to – you would have had to That's correct, Jonah. I do have that burden of persuasion, but I believe that the facts of the case and the way the judge treated those departures during the sentencing period – But he didn't depart. He gave variances. There's a difference, as you well know. So was there anything in the sentencing? Was there an argument for him to depart? Did anybody suggest that he should depart and go below the guidelines? Well, the problem was is that the judge cut off argument about minor role at a certain point, and that was all he wanted to hear about that. And then he said on the record, this is as low as I can go, which seemed to be a pretty strong indication that he wasn't contemplating a departure. I think Your Honor makes a fair point, but I do not think the record is clear that that And it's, to me, a slippery slope to infer that had a judge calculated the guidelines as I believe to be correctly, which would have been a huge difference, that in that case, the judge would have simply imposed the same sentence. There's no evidence that that's the case, and I think that that's a dangerous – that's a dangerous precedent to set. So you are now over the time that I allotted for rebuttal. But my colleagues have any more questions? All right. Thank you. Thank you very much, Your Honor. Oh, yes. We are adjourned for the day. Thank you. All rise. This court for this session stands adjourned. Thank you.
judges: Ebel, BADE, FORREST